1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

### EASTERN DISTRICT OF CALIFORNIA

8

9    LEONARD P. SIMENTAL,                    1:09-cv-02077-DLB (HC)

10                     Petitioner,           ORDER DENYING PETITION FOR WRIT OF
                                             HABEAS CORPUS, DIRECTING CLERK OF
11         v.                                COURT TO ENTER JUDGMENT IN FAVOR
                                             OF RESPONDENT, and
12                                           DECLINING TO ISSUE CERTIFICATE OF
     F. GONZALEZ, Warden                     APPEALABILITY
13
                       Respondent.           [Doc. 1]
14   _____/

15
16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

18   the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

                                          BACKGROUND
19
20          Petitioner was charged by information with four counts of committing a lewd or

21   lascivious act on a child under the age of 14 (Cal. Penal Code,[1] § 288(a)).  Each count included

22   allegations that Petitioner committed an offense against more than one victim (§ 667.61(c)); that

23   he had a prior "strike" conviction (§§ 667(a)-(e), 1170.12); and that he had a prior serious felony

24   conviction (§ 667(a)).  Prior to trial, one of the lewd conduct charges (count 4) was dismissed.

25          Petitioner initially waived a jury trial on the prior conviction allegations.  On September

26   7, 2006, following a jury trial, Petitioner was convicted of (count one) committing a lewd or

27   lascivious act on a child under the age of 14 and of simple assault, a lesser included offense, on

28
     ────────────────
     [1] All further statutory references are to the California Penal Code unless otherwise indicated.

                                                1

1  count 3.  The jury deadlocked on count 2-which was dismissed.  Multiple victim allegations were

2  found true.  The trial court found the prior convictions true, and dismissed the multiple victim

3  allegation as to count 3 because it did not apply.

4   On October 16, 2006, the trial court granted Petitioner's motion to strike the prior

5  conviction and imposed a thirteen-year sentence.

6   Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth

7  Appellate District.  The appellate court affirmed the judgment.  Petitioner then filed a petition for

8  review in the California Supreme Court.  The petition was denied on July 9, 2008.  Petitioner did

9  not seek certiorari in the United States Supreme Court.

10   Petitioner filed a state habeas corpus petition in the California Supreme Court on June 12,

11  2009.  The petition was denied on October 28, 2009.

12   Petitioner filed the instant petition for writ of habeas corpus on November 30, 2009.

13  Respondent filed an answer to the petition on August 18, 2010, and Petitioner filed a traverse on

14  September 16, 2010.

15  STATEMENT OF FACTS

16  *Count 1-SW*

17  In September 2004, 12-year-old SW and her family attended a church barbeque.
   SW told defendant, often called Pastor Leonard, that she had not won a backpack

18  at the raffle. SW knew who defendant was, but she had never spoken to him
   before that afternoon. He told her to come to his house. When she did, he gave her

19  a backpack. She told him her birthday was coming up and he told her he would
   give her a present if she came to his house again.

20

21  The next evening, SW told her parents she was going to defendant's house. When
   she got there, he opened the door, let her in and handed her a black bag containing

22  a radio, a chain, a wallet, a few dollars and some other items. He invited her in
   and locked the door behind her. Then he took the bag away and led her to his bed.

23  He told her to sit down. He knelt down by her and told her he had oil for praying.
   He put some oil on his hands and started praying over SW. He dabbed the oil on

24  her scars and blisters and on her forehead. He told her the oil would help her on
   the way home and the angels would watch over her when the dogs bit her. Then

25  he put his hands on her shoulders and moved her onto her back so she was lying
   down with her legs hanging over the bed. He pushed her legs apart, pushed her

26  shorts and panties aside, and touched her vaginal area.

27  SW was confused. She thought defendant was praying and performing some kind
   of religion. But she got scared and got up off the bed. She pushed him away,

28  picked up the black bag and unlocked the door. Defendant tried to convince her to
   go out the back door, but she ran out the front. She ran three or four blocks to her

2

house and saw her mother on the front porch. SW threw the bag over the fence surrounding her yard, then climbed over herself. Her mother saw her crying and asked what was wrong. SW told her mother what had happened and they called the police.

*Counts 2 and 3-RR*

Defendant often approached RR's mother to engage her in conversations about God and the church. RR's mother saw defendant at church and on the street. She trusted him because he was always praying and talking about God.

RR was about 11 years old. She had epilepsy and her mother did not want to leave her at home alone. Because RR's mother left the house early to work in the fields, she asked defendant if he would watch RR in the mornings until she left for school. Defendant agreed, and came to the house in the mornings before RR woke up.
One morning when RR was still in bed, she woke up because defendant had his fingers inside her vagina. When he realized she was awake, he got up and left. RR never told her mother what defendant had done.

On another occasion, RR's mother took RR to defendant's house so he could pray over RR. Defendant lived in a garage, where he also kept a "prayer box," a cardboard box large enough to hold two people, with a curtain-covered opening. Defendant and RR's mother went into the prayer box to pray. RR could hear defendant praying inside. When they came out, defendant and RR entered the box. As defendant prayed for RR, he reached up under her dress and touched her chest, then he reached down and tried to touch her vagina. He put oil on her body. RR moved around and pushed his hands away, trying to get him to stop touching her. He continued to pray aloud. RR's mother noticed all the movement inside the box and wondered if RR was having a seizure. On the way home, RR told her mother what defendant had done in the box.

The police recruited SW to make pretext telephone calls to defendant. In those calls, played for the jury, SW accused him of touching her private part with oil while he prayed over her. He repeatedly denied doing so.

On October 22, 2004, the police went to defendant's home. During the interview, defendant denied, among other things, ever having any children in his home alone or giving SW a birthday present. When the police confronted him with contradictory facts, defendant admitted some were true, but he repeatedly denied touching SW's vaginal area. He told the police he recently had been acquitted of child molestation charges.

*Evidence of Prior Sex Offenses*

*JM*

In 1999, MR was defendant's neighbor. When either she or her eight-year-old daughter, JM, were out in the yard, defendant would drop his pants, expose himself to them and masturbate. This happened almost every day. Another neighbor also witnessed this behavior. When the police refused to do anything, MR and JM stayed with a friend.

*////*

*TV and CS*

In 2002, JF's children, CS, TV and their brother, would play with some neighborhood children, who were defendant's nieces and nephews. JF allowed her children to go with them down the street to the church. They often went to the church after school to color pictures and talk about God.

More than once, defendant called CS into another room and showed her how to be baptized. He leaned her back and told her to pretend she was underwater. While he held her, he put his hand under her shorts and underwear and touched her vaginal area. CS felt embarrassed and scared, so she kept the incidents to herself.

Defendant would also touch CS's sister, TV. When she sat on his lap to pick out a picture to color, he put his fingers up her shorts and touched her vaginal area. In early 2003, CS insisted on living with her grandmother in another city. TV and her brother continued to go to the church. On May 28, 2003, they asked JF's permission to go to a special event at the church. They went, but almost immediately came running back to the apartment. TV told her mother she was scared because she saw defendant through a window. Her mother asked her why that would scare her and she said it was a secret. She whispered that defendant had been putting his hands up her shorts and touching her vaginal area.

JF immediately called CS at her grandmother's house and asked her if anyone had ever touched her inappropriately. CS was quiet, then asked JF to promise not to tell anyone. CS went into the bathroom for privacy, then told her mother that defendant had touched her bottom and her vaginal area. JF called the police. The parties stipulated that defendant had been acquitted of six counts of violating Penal Code section 288, subdivision (a) based on charges involving CS and TV.

*Defense Evidence*

Defendant presented testimony to impeach the credibility and character of SW and RR. He also presented witnesses who attested to his character and reputation as a man of God and a helpful neighbor. Defendant testified he had become a Christian after he was incarcerated in 1993 for burglary. He explained that RR stumbled as she entered the prayer box. He denied touching SW's vaginal area.

<u>DISCUSSION</u>

I.   <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

1   and based on a factual determination will not be overturned on factual grounds unless objectively

2   unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

3   Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

4   apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v.

5   Blodgett, 393 F.3d 943, 976-77 (2004).

6        Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501

7   U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but

8   provided no reasoned decision, courts conduct "an independent review of the record . . . to

9   determine whether the state court [was objectively unreasonable] in its application of controlling

10  federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we

11  independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v.

12  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

13  III.    Insufficient Evidence/Actual Innocence

14       Petitioner contends there was insufficient evidence of his guilt and he is actually innocent

15  of the crimes for which he was convicted.  Petitioner presented this claim to the California

16  Supreme Court which summarily denied the claim.   In such circumstances, this Court must

17  independently review the record to determine whether the state court clearly erred in its

18  application of Supreme Court law.  Delgado v. Lewis, 223 F.3d at 982.  AEDPA requires this

19  Court to give considerable deference to state court decisions, and the state court's factual

20  findings are presumed correct.  28 U.S.C. § 2254(e)(1).  Although this Court must independently

21  review the record where there is no reasoned decision, we still continue to show deference to the

22  state court's ultimate decision.  Pirtle v. Morgan, 313 F.3d at 1167.

23       The law on insufficiency of the evidence claim is clearly established.  The United States

24  Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

25  federal court must determine whether, viewing the evidence and the inferences to be drawn from

26  it in the light most favorable to the prosecution, any rational trier of fact could find the essential

27  elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

28  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

1    Petitioner's claim is without merit.  The first victim S.W. testified that Petitioner invited

2    her to his home offering her a present.  (RT 256-257.)  She told her parents she was going to him

3    home before she left.  (RT 205-206, 257-258.)  After she entered the house, Petitioner locked the

4    door.  Petitioner gave S.W. some gift, but took them away and told her to sit on his bed.  (RT

5    258, 261-265.)  He instructed her to lie down, he then pushed her legs apart, pushed down her

6    shorts and panties aside and touched her genital area.  (RT 265-270, 307, 310-311.)  When she

7    arrived home she was crying and told her mother that Petitioner had touched her genital area.

8    (RT 206-208, 211, 223, 273-274.)

9        The second victim, R.R., testified that Petitioner touched her chest and attempted to touch

10   her genital area while the two were inside the "praying box" but she pushed him away.  (RT 730-

11   731, 774.)  R.R.'s mother was present when Petitioner and her daughter were inside the "praying

12   box" and saw the box move.  (RT 810.)  R.R. stated that women from the church told her not to

13   report the incident in exchange for money.  The women also threatened to accuse R.R. and her

14   mother of being prostitutes.  (RT 733-734, 837-840.)

15       Based upon this evidence, there was more than sufficient evidence to convict Petitioner of

16   lewd or lascivious conduct and simple assault, and the state courts' determination of this issue

17   was not contrary to, or an unreasonable application of, clearly established Supreme Court

18   precedent.

19       Moreover, Petitioner's actual innocence claim is not cognizable for habeas corpus relief.

20   Herrera v. Collins, 506 U.S. 390, 400 (1993) ("federal habeas courts sit to ensure that individuals

21   are not imprisoned in violation of the Constitution - not to correct errors of fact.") An actual

22   innocence claim is based on newly-discovered evidence not presented at trial.  See id. at 393,

23   417.  Petitioner has not alleged that newly discovered evidence supports his claim.  Rather, his

24   actual innocence claim is based solely on his argument that his conviction is not supported by

25   sufficient evidence.  Thus, Petitioner's actual innocence claim is meritless, and there is no

26   showing the state court's rejection of this claim was contrary to or an unreasonable application of

27   controlling United States Supreme Court precedent, or an unreasonable determination of the facts

28   in light of the evidence presented.  28 U.S.C. § 2254.

1    IV.    Double Jeopardy/Collateral Estoppel

2         Petitioner contends that his conviction for lewd conduct was barred by double jeopardy

3    and on collateral estoppel grounds.  This claim was summarily denied by the California Supreme

4    Court.  As with the prior claim, this Court must conduct an independent review of the record.

5    Delgado v. Lewis, 223 F.3d at 982.

6         After the criminal complaint was filed against Petitioner, but before the Information was

7    filed and Petitioner was held to answer, defense counsel filed a motion in limine to dismiss

8    Count One on double jeopardy grounds.  Petitioner argued that count 1 of the complaint, alleging

9    lewd conduct with S.W., was barred because the jury in the first prosecution for a greater offense

10   acquitted him on the greater offense and was unable to reach a verdict on the lesser offense of

11   lewd conduct.  The trial court denied the motion.

12        The Double Jeopardy Clause provides that no person shall "be subject for the same

13   offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Clause

14   "protects against a second prosecution for the same offense after acquittal.  It protects against a

15   second prosecution for the same offense after conviction.  And it protects against multiple

16   punishments for the same offense."  Brown v. Ohio, 432 U.S. 161, 165 (1977).  The Clause

17   prohibits a defendant to be retried of a greater offense after conviction of a lesser-included

18   offense.  Id.; People v. Fields, 13 Cal.4th 289, 312 (1996).

19        In this case, because the jury acquitted Petitioner of the greater offense and hung on the

20   lesser-included offense, the prosecutor was free to re-try Petitioner on the lesser-included

21   offense.  This case is analogous to the circumstances in Forsberg v. United States, 351 F.2d 242,

22   246 (9th Cir. 1965), where the jury acquitted Forsberg of the greater offense but hung on the

23   lesser-included offense.  The government sought to retry Forsberg on the lesser-included offense,

24   and he argued double jeopardy barred retrial.  Id. at 245.  The Ninth Circuit did not agree and

25   held that because he was acquitted on the greater offense and there was no acquittal on the lesser-

26   included offense, double jeopardy did not bar retrial of the lesser-included offense.  Id. at 248.

27   Thus, the state courts' determination of this issue was not contrary to, or an unreasonable

28   application

                                            8

1   of, clearly established Supreme Court precedent.  28 U.S.C. § 2254(d).

2   V.      Evidentiary Error Claim

3           Petitioner claims the trial court erred by allowing evidence of the prior acts against JM,

4   TV and CS.

5           Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a

6   federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083,

7   1085 (9th Cir. 1985).  Nevertheless, there can be habeas relief for the admission of prejudicial

8   evidence if the admission was fundamentally unfair and resulted in a denial of due process.

9   Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v.

10  Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir.

11  1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613

12  (9th Cir.1990).  However, the failure to comply with state rules of evidence alone is neither a

13  necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

14  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no

15  permissible inferences that the jury may draw from the evidence can its admission rise to the

16  level of a due process violation. Id. at 920.  Intent is a permissible inference that the jury may

17  draw from the evidence of prior bad acts.  See Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir.

18  1999).

19          The California Court of Appeal denied the claim in the last reasoned decision stating:

20          I. Section 352

21          Defendant argues that the trial court abused its discretion under section 352 when
            it admitted evidence of defendant's prior acts against JM, TV and CS. We
22          disagree.

23          Although evidence of a defendant's propensity or disposition is generally not
            admissible, in 1995 the Legislature enacted section 1108 to expand the
24          admissibility of propensity evidence in sex offense cases.[FN2] (People v. Falsetta
            (1999) 21 Cal.4th 903, 911.) Section 1108 provides that evidence of a defendant's
25          commission of another sexual offense is admissible in a criminal action in which
            the defendant is accused of a sexual offense. Such evidence allows jurors to infer
26          both that the defendant has a predisposition to commit sex offenses and that as a
            result of this predisposition he was likely to commit and did commit the charged
27          sex offense. (People v. Reliford (2003) 29 Cal.4th 1007, 1012-1013.)

28

                                                9

FN2. Section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

However, the admission of propensity evidence under section 1108 is subject to the court's weighing process under section 352, which "provides a safeguard against undue prejudice." (*People v. Johnson* (2000) 77 Cal.App.4th 410, 420.) Section 352 provides that the court has the discretion to exclude relevant evidence if its probative value is outweighed by the probability that its admission will consume an undue amount of time or would create a substantial danger of undue prejudice, of confusing the issues or of misleading the jury. Prejudice in the context of section 352 means " 'evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.' [Citation.]" (*People v. Scheid* (1997) 16 Cal.4th 1, 19.) "Painting a person faithfully is not, of itself, unfair." (*People v. Harris* (1998) 60 Cal.App.4th 727, 737.)

"Review of a trial court decision pursuant to ... section 352 is subject to abuse of discretion analysis. [Citations.] 'The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon mechanically automatic rules.... [Citation.]'" (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 352.) We will not disturb the trial court's exercise of its broad discretion under section 352 unless the court's decision was arbitrary, capricious, patently absurd or exceeding the bounds of reason, all circumstances considered. (*People v. Jennings* (2000) 81 Cal.App .4th 1301, 1313-1314; *People v. Giminez* (1975) 14 Cal.3d 68, 72.)

After reviewing the record in this case, we see no abuse of discretion in the trial court's admission of evidence of defendant's prior sex offenses. We do not agree that the likelihood of confusion was great or the time taken was excessive. The evidence was presented in a clear manner and the number of witnesses did not confuse the issues of evidence whatsoever. Most of the prior offenses were highly similar to the charged offenses, demonstrating defendant's propensity for touching young girls as he pretended to pray for, baptize or supervise them. Although the masturbation offenses were less similar, they also demonstrated defendant's inappropriate sexual behavior toward children because he often performed the acts in front of eight-year-old JM. Furthermore, complete similarity is not required (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41 [charged and uncharged crimes need not be sufficiently similar that evidence of latter would be admissible under § 1101; otherwise § 1108 would serve no purpose] ); any dissimilarities went to the weight, not the admissibility, of the testimony regarding those acts. As for the offenses of which defendant had been acquitted, the jury was informed of those acquittals and thus had the information with which to weigh the evidence. As we explain below, such evidence is admissible under those circumstances. (*People v. Mullens* (2004) 119 Cal.App.4th 648, 662-663.)

Lastly, the record does not support the argument that the jury may have felt the need to punish defendant for prior acts for which he had gone unpunished (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [a jury may be tempted to punish a defendant for past crimes for which he has gone unpunished] ). In fact, the jury's deadlock on count 2 suggests the jury did not automatically convict defendant because of his prior offenses, but instead based its decisions on an

objective evaluation of the evidence in light of the instructions given. Moreover, any risk that the jury might be tempted to punish him for prior offenses regardless of whether it determined he was guilty of the charged offenses was counterbalanced by the instructions on reasonable doubt (CALJIC No. 2.90), the necessary proof of each element of the charged offenses (CALJIC Nos. 2.72, 9.00, 10.41), and the prohibition against convicting defendant of any crime with which he was not charged (CALJIC Nos. 2.50.1, 2.50.01, 10.44). (See *People v. Frazier, supra,* 89 Cal.App.4th at p. 42.) We presume the jury understood and followed these instructions. (*People v. Scott* (1988) 200 Cal.App.3d 1090, 1095.)

Nevertheless, even if the trial court erred in admitting evidence of the prior sex offenses, that error was harmless because it is not reasonably probable that a more favorable result would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The evidence against appellant was very strong. After defendant touched SW, she became frightened and ran directly home. She ran crying to her mother, who was outside, and told her what had just happened. When defendant touched RR in the prayer box, RR's mother observed the unusual movements inside the box as RR pushed defendant away and removed his hands from under her dress. The box moved so much that RR's mother believed RR might be having a seizure. In light of these facts, any error was harmless.


II. Acquitted Charges

Defendant contends the trial court erred by admitting evidence of prior acts against TV and CS of which he had been tried and acquitted.  Defendant acknowledges this issue has been decided against him in *People v. Mullens*, *supra*, 119 Cal.App.4th at pages 662 through 663.  For the reasons explained in that case, we rejected defendant's contention.


III.  Due Process

Conceding the Supreme Court has upheld the constitutionality of section 1108, defendant raises a due process challenge to preserve it for federal purposes.  We, of course, are bound to follow *People v. Falsetta*, *supra*, 21 Cal.4th 903.  *(Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450. 455.)

(Lodged Doc. No. 4 at 6-9.)

California Evidence Code section 1108 is akin to Federal Rule of Evidence 414.  In addition, California Evidence Code section 352 is the state equivalent of Federal Rules of Evidence 402 and 403.  See Mejia v. Garcia, 543 F.3d 1036, 1047 n. 5 (9th Cir. 2008).  In United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001), the Ninth Circuit rejected the argument that the traditional ban on the admission of propensity evidence qualifies as a "fundamental" principle of justice, as it pertains to sex offenses, when the court rejected a

1  due process challenge to Federal Rules of Evidence 414.  The Ninth Circuit concluded that

2  Rule 414 did not violate due process because Rule 403 (the federal equivalent to California

3  Evidence Code section 352) acts as a filter that results in the exclusion of evidence that is so

4  prejudicial as to constitute a due process violation.

5      The Supreme Court has expressly declined to determine whether a state law that

6  permits admission of prior crimes to prove propensity to commit the current offense violates

7  the Due Process Clause.  <u>Estelle v. McGuire</u>, 502 U.S. at 75, n. 5 ("[W[e express no opinion

8  on whether a state law would violate the Due Process Clause if it permitted the use of 'prior

9  crimes' evidence to show propensity to commit a charged crime.").  If there no Supreme

10  Court authority on point then it simply "cannot be said that the state court 'unreasonabl[y]

11  appli[ed] clearly established Federal law.'" <u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006); <u>see</u>

12  <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (per curiam).

13      Because the propensity evidence was properly admitted under California law to prove

14  Petitioner's intent, and lacking any clearly established Supreme Court authority prohibiting

15  admission of such evidence, it cannot be said that the state court of appeal opinion was

16  "contrary to, or involved an unreasonable application of, clearly established Federal law, as

17  determined by the Supreme Court of the United States" nor was it based on "an unreasonable

18  determination of the facts in light of the evidence presented in the State court proceeding."

19  28 U.S.C. § 2254(d)(1), (2).

20                                          <u>ORDER</u>

21      Based on the foregoing, it is HEREBY ORDERED that:

22      1.      The instant petition for writ of habeas corpus is DENIED;

23      2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and

24      3.      The court declines to issue a Certificate of Appealability.  28 U.S.C. §

25              2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a COA should be

26              granted where the applicant has made "a substantial showing of the denial of a

27              constitutional right," i.e., when "reasonable jurists would find the district

28              court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman</u>

v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:**   **November 8, 2010**                       **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE